1  MANATT, PHELPS & PHILLIPS, LLP
   Jill M. Pietrini (Bar No. CA 138335)
2     jpietrini@manatt.com
   Barry E. Mallen (Bar No. CA 120005)
3     bmallen@manatt.com
   Kathryn A. Vaclavik (Bar. No. CA 176250)
4     kvaclavik@manatt.com
   Stuart H. Katz (Bar No. CA 226622)
5     skatz@manatt.com
   11355 West Olympic Boulevard
6  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
7  Facsimile: (310) 312-4224

8  *Attorneys for Plaintiff*
   SUMMIT ENTERTAINMENT, LLC
9

FILED
CLERK, U.S. DISTRICT COURT

NOV - 6 2009
12:28

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

10              UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
11                  WESTERN DIVISION

12

13 SUMMIT ENTERTAINMENT, LLC,          CV09-8161 PSG (MANx)
   a Delaware limited liability company,
14                                     Case No. _____
                Plaintiff,
15                                     **COMPLAINT FOR FALSE
        v.                             DESIGNATION OF ORIGIN,
16                                     TRADEMARK INFRINGEMENT,
   BECKETT MEDIA, LLC., a Delaware     TRADEMARK DILUTION,
17 Corporation, and Does 1-10, inclusive, COPYRIGHT INFRINGEMENT,
                                       AND UNFAIR COMPETITION,
18              Defendants.            BREACH OF CONTRACT**

                                       **(Demand For Jury Trial)**
19

20      Plaintiff Summit Entertainment, LLC ("Summit"), for its complaint against

21 defendant Beckett Media, LLC ("Defendant") and Does 1-10, alleges as follows:

22                          **JURISDICTION**

23      1.    This action arises under the trademark and anti-dilution laws of the

24 United States, 15 U.S.C. § 1125, *et seq.*; the Copyright Act of 1976, as amended,

25 17 U.S.C. § 101, *et seq.*; and under the statutory and common law of unfair

26 competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and

27 (b), and § 1367, 15 U.S.C. § 1121, 17 U.S.C. § 501. This action arises under the

28 laws of the United States.

2.    Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case because Summit resides in this District, and on information and belief, Defendant is subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Summit's claims occurred in this District.

## PARTIES

3.    Summit is a Delaware limited liability company having its principal place of business in Santa Monica, California.

4.    On information and belief, Defendant is a Delaware corporation having its principal place of business in Anaheim, California.

## FACTS

**Summit's Business, Trademarks, and Copyrights**

5.    Since 1991, Summit and its predecessors have been an active participant in the motion picture industry. Summit finances, produces and distributes films and related entertainment products.

6.    Summit has also been involved in licensing trademarks associated with the motion pictures that it produces and distributes for merchandise sales.

7.    Summit produced and distributes the movie *Twilight*, the extremely successful and popular film about a teenage girl, Isabella ("Bella") Swan, who falls in love with a vampire, Edward Cullen. Bella's other suitor in the film is Jacob Black, a werewolf. The film was released in the United States on November 21, 2008, and was promoted for many months prior to its release. Summit intends to release the second motion picture in the *Twilight* series, *The Twilight Saga: New Moon* ("*New Moon*"), in the United States on November 20, 2009.

8.    Summit is the owner of the trademark TWILIGHT in block letters, and in a distinctive stylized font (the "stylized TWILIGHT mark") (collectively "the TWILIGHT Marks") and owns the trademark NEW MOON. Summit owns 36 pending federal trademark applications to register the TWILIGHT Marks and 19 pending federal trademark applications to register the NEW MOON trademark

1   for use on various types of goods and services.

2         9.    Summit has licensed the TWILIGHT Marks and the NEW MOON

3   mark to third parties to sell a wide variety of products, including posters, clothing,

4   trading cards and beverageware.  Summit's licensees first sold posters bearing the

5   TWILIGHT Marks in May of 2008, and continue to sell such products.

6         10.    Summit is the copyright owner of both the screenplay and the motion

7   pictures *Twilight* and *New Moon* (the "*Twilight* Motion Pictures"), as well as all

8   publicity, promotional, unit, and special shoot photography related thereto and the

9   trailers for the *Twilight* Motion Pictures.  Summit has licensed its copyrighted

10  photographs to third parties to promote the *Twilight* Motion Pictures, as well as for

11  various items of merchandise related to the *Twilight* Motion Pictures and bearing

12  the TWILIGHT Marks and the NEW MOON mark.

13  **Defendant and Its Infringing Actions**

14        11.    On information and belief, Defendant is a publisher of sports and

15  entertainment collectibles and memorabilia magazines.

16        12.    On information and belief, Defendant distributes its magazines widely

17  in various outlets throughout the United States including corner newsstands,

18  bookstores, grocery stores, drugstores, and other similar retail outlets.  In addition,

19  Defendant operates a website at <www.beckett.com> and sells its magazines from

20  that website as well.

21        13.    In late August 2009, Summit learned that Defendant was and is selling

22  an 80-page fan magazine entitled *Twilight* (the "first Twilight Fanzine") devoted

23  entirely to stories and articles about the *Twilight* Motion Pictures and the characters

24  and actors from those motion pictures, as well as advertisements for *Twilight*

25  trading cards, dolls and other collectibles.  Included in this first Twilight Fanzine

26  are more than 30 unauthorized and unlicensed reproductions of photographs from

27  the *Twilight* Motion Pictures and photographs and artwork produced for promotion

28  of the *Twilight* Motion Pictures (collectively, along with the photographs and

artwork described in paragraphs 17 and 23 below, the "Photographs"). Included in the center of the magazine is a removable, approximately 14 x 20½ inch poster, that is an unauthorized and unlicensed reproduction of Summit's promotional photograph and artwork for the *Twilight* sequel, *New Moon* ("Poster Image I"). Appearing in large print as the title on the cover of the first Twilight Fanzine is the TWILIGHT trademark in the same or confusingly similar font as the stylized TWILIGHT mark used by Summit for the *Twilight* Motion Pictures. Defendant has been selling this stand alone Twilight Fanzine for $9.99 per copy. A true and correct copy of the first Twilight Fanzine is attached hereto as **Exhibit A**.

14.    The distinctive font of the stylized TWILIGHT mark is shown below on the left. For comparison, Defendant's infringing use appears on the right.

**Summit's Stylized Mark**                  **Defendant's Infringing Use**

                  twilight

15.    On September 1, 2009, Summit sent Defendant a letter demanding that Defendant cease and desist its trademark and copyright infringement. A true and correct copy of Summit's demand letter to Defendant is attached hereto as **Exhibit B**. Defendant failed to respond to Summit's initial letter, and Summit was forced to send a follow-up demand letter on September 17, 2009. A true and correct copy of Summit's second demand letter to Defendant is attached hereto as **Exhibit C**.

16.    On September 22, 2009, Brown Law, LLP in Raleigh, North Carolina, acting on behalf of Defendant, contacted Summit's counsel seeking more time for Defendant to respond to Summit's demand letters, stating that they had just received copies of the demand letters the previous day and had not yet seen a copy of the first Twilight Fanzine. Summit's counsel asked that Defendant's counsel obtain a copy of the first Twilight Fanzine and call the following day to discuss the matter, because Summit urgently needed Defendant to cease producing and selling

the first Twilight Fanzine given the large amount of infringing material in it. Defendant did not respond.

17.    On September 29, 2009, Leopold, Petrich & Smith, in Beverly Hills, California, new counsel for Defendant, contacted Summit's counsel, again seeking an extension of time for Defendant to respond to Summit's demand letters, stating that they had just received the matter, had not seen a copy of the first Twilight Fanzine, and counsel was leaving the country until Sunday, October 4, 2009. Summit's counsel conveyed to Defendant's counsel the urgency of Summit's need to have Defendant cease producing and selling the first Twilight Fanzine and agreed to an extension only until Monday, October 5, 2009.

18.    On October 2, 2009, Summit discovered that Defendant had published and was selling a second 80-page Twilight Fanzine, also for $9.99 per copy (the "second Twilight Fanzine," with the first Twilight Fanzine collectively "the Twilight Fanzines") . Like the first Twilight Fanzine, the second Twilight Fanzine is filled with more than 20 unauthorized and unlicensed reproductions of photographs from the *Twilight* Motion Pictures and photographs and artwork produced for promotion of those films (also part of the "Photographs"). Similar to the first Twilight Fanzine, the second Twilight Fanzine includes in the center of the magazine a removable, approximately 14 x 20½ inch, poster that is an unauthorized and unlicensed reproduction of a photograph from *New Moon* ("Poster Image II," with Poster Image I and Poster Image II, collectively, the "Poster Images"). The second Twilight Fanzine also bears as the title in large print on the cover the TWILIGHT trademark in the same or confusingly similar font as the stylized TWILIGHT mark used by Summit for the *Twilight* Motion Pictures. A true and correct copy of the second Twilight Fanzine is attached hereto as **Exhibit D**.

19.    On October 5, 2009, Defendant's counsel represented that the first Twilight Fanzine was authorized based on Defendant's access to Summit's publicity website at www.summitpublicity.com (the "Website"). The Website

1    contains, among other things, downloadable copyrighted photographs and other

2    artwork from or related to the *Twilight* Motion Pictures of which Summit is the

3    copyright owner (the "Content"). The Website and the Content thereon are

4    intended for use only by legitimate journalists who are reviewing or commenting on

5    Summit's films. The Terms of Use of the Website specifically state that the

6    Content from the Website may be used "only for journalistic purposes in

7    connection with and/or related to motion pictures and other entertainment

8    programming distributed by Summit." The Terms of Use do not include

9    permission to allow third parties to merchandise the *Twilight* Motion Pictures, as

10   Defendant has done and continues to do.

11        20.    Defendant requested a password and permission to use the Website for

12   "newsstand magazine coverage." Defendant was granted a password and

13   permission based on that request and under the Terms of Use for the Website, to

14   which Defendant expressly agreed when it signed on to the Website for the first

15   time. The Terms of Use grant the right to use Content from the Website solely "for

16   journalistic purposes" in connection with an article reviewing or commenting on

17   Summit's motion picture(s). Paragraph 2 of the Terms of Use for the Website

18   states: "you agree that: (a) you will not edit, alter or modify any of the Content

19   without Summit's prior written approval; . . . and (d) you will not use the Content

20   or the names, images, likeness or biographical images of the performers in the

21   Program in any manner which could constitute an express, direct or indirect tie-in

22   or endorsement of any product, service, sponsor or of your media outlet." The

23   Terms of Use also provide: "Unauthorized use [of] the Content may be a violation

24   of law which may result in civil and criminal liability. Summit has the right to

25   enforce its intellectual property rights to the fullest extent of the law." Paragraph

26   12 of the Terms of Use for the Website provides: "You agree that a breach by you

27   of any of your undertakings under these Terms would cause Summit damage which

28   could not readily be remedied by an action at law and might, in addition, constitute

1   an infringement of copyright and/or trademark and/or other applicable laws, and/or

2   a violation of moral rights (where applicable).  Any such breach would, therefore,

3   entitle Summit to equitable remedies, costs and attorneys' fees in addition to any

4   other rights and remedies provided herein or by law."  A true and correct copy of

5   the Terms of Use for the Website is hereto as **Exhibit E.**

6        21.    Defendant's use of Summit's copyrighted material and trademarks is

7   not for a journalistic purpose.  Even if it had some modicum of journalistic purpose,

8   Defendant's use goes far beyond a journalistic use and therefore exceeds the scope

9   of the limited license that Summit grants to accredited journalists to use Content

10  from the Website.  Defendant has used a vast amount of Summit's copyrighted

11  works and the TWILIGHT Marks to create stand alone products, the Twilight

12  Fanzines, for commercial, not journalistic, purposes.  Defendant's extensive use of

13  Summit's copyrighted material in these stand alone products is such that it creates

14  the false impression that Summit endorsed, licensed or sponsored the Twilight

15  Fanzines and/or Defendant.

16       22.    Defendant also has edited, altered and/or modified Summit's

17  copyrighted material without Summit's prior written approval.  The first Twilight

18  Fanzine includes at least 14 images that have been created by editing, altering,

19  and/or modifying Summit's copyrighted material without Summit's prior written

20  approval, and the second Twilight Fanzine includes at least an additional seven

21  images that have been created by editing, altering, and/or modifying Summit's

22  copyrighted material without Summit's prior written approval.  Summit's

23  copyrighted materials have been altered, among other ways, by cropping single

24  images from broader photographs, changing color schemes of photographs,

25  changing the backgrounds appearing behind characters in the photographs, creating

26  collages from single photographs, and superimposing lettering and other designs

27  over the images in the photographs.  Examples of such alterations in the first

28  Twilight Fanzine appear on the front cover, the back of the front cover, and on

pages 1, 10-11, 12-13, 20, 26, 28-29, 30, 32, and 53.  Examples of such alterations in the second Twilight Fanzine appear on the front cover and on pages 12-13, 24-25, 42-43, and 62.

23.    Defendant has used in the Twilight Fanzines copyrighted material owned by Summit, including photographs and other artwork related to the *Twilight* Motion Pictures that are not part of the Content on the Website (also part of the "Photographs") and therefore were never covered in any way by the limited scope license granted in connection with the Content on the Website.  At least eight of the Photographs in first Twilight Fanzine and at least five of the Photographs in the second Twilight Fanzine are <u>not</u> part of the Content included on the Website and thus were never within the scope of even the limited license granted pursuant to the Terms of Use for the Website.

24.    Defendant's actions were willful.  Prior to publishing the first Twilight Fanzine, Defendant contacted Summit's licensee for trading cards to find out the identity of the licensor of the *Twilight* property.  Defendant was given the contact information for Summit, but did not seek a proper license from Summit before publishing the Twilight Fanzines.  Defendant then proceeded to copy and post all 72 Twilight trading cards of Summit in the first Twilight Fanzine.  Even after notification of Summit's objection to the first Twilight Fanzine, Beckett published and/or distributed the second Twilight Fanzine.  On information and belief, Defendant intends to publish six more issues of Twilight Fanzines despite Summit's clear objections to the first two Twilight Fanzines.

25.    Summit recently learned that Defendant is now selling the printing plates for the Twilight Fanzines on eBay and on Defendant's website.  On information and belief, Defendant posted the magazine printing plate for the first Twilight Fanzine in October 2009, well after Defendant was put on notice of Summit's claims.  In early November 2009, Summit learned that Defendant was selling the printing plate for the second Twilight Fanzine on eBay, and on

Defendant's website. True and correct copies of the eBay listing and the listing on Defendant's website for the printing plates are attached hereto as **Exhibit F**.

## FIRST CAUSE OF ACTION

### (False Designation of Origin – 15 U.S.C. § 1125(a))

26. Summit repeats and realleges each and every allegation of paragraphs 1 through 25, above, as though fully set forth herein.

27. Defendant's actions as alleged herein constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

28. The use of the TWILIGHT Marks by Defendant constitutes a false designation of origin and a false description or representation that wrongfully and falsely designates the Twilight Fanzines as originating from Summit, or being associated with, licensed by, or authorized by Summit.

29. As a direct and proximate result of Defendant's wrongful acts, Summit has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation, and goodwill. Defendant will continue to use and/or will restart the use of, unless restrained, the TWILIGHT Marks and will cause irreparable damage to Summit. Summit has no adequate remedy at law and is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of false designation of origin.

30. Summit is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts. Summit is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendant's acts of false designation of origin.

31. Summit is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of its wrongful acts. Summit is presently unable to ascertain the extent of the gains, profits, and

1  advantages that Defendant has realized by reason of its acts of false designation of

2  origin.

3       32.    Because of the willful nature of Defendant's wrongful acts, Summit is

4  entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.

5  § 1117 and destruction of the Twilight Fanzines under 15 U.S.C. § 1118.

6       33.    Summit is also entitled to recover its attorneys' fees and costs of suit

7  pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement)

10      34.    Summit repeats and realleges each and every allegation of paragraphs

11  1 through 33, above, as though fully set forth herein.

12      35.    Defendant has used in commerce, without Summit's permission, the

13  TWILIGHT Marks in a manner that is likely to cause confusion with respect to the

14  source and origin of the Twilight Fanzines and is likely to cause confusion or

15  mistake and to deceive purchasers as to the affiliation, connection, or association of

16  Summit with Defendant and/or its products.

17      36.    Defendant's acts constitute infringement of the TWILIGHT Marks in

18  violation of the common law.

19      37.    As a direct and proximate result of Defendant's wrongful acts, Summit

20  has suffered and continues to suffer and/or is likely to suffer damage to its

21  trademark, business reputation, and goodwill.  Defendant will continue to use

22  and/or will restart the use of, unless restrained, the TWILIGHT Marks and will

23  cause irreparable damage to Summit.  Summit has no adequate remedy at law and is

24  entitled to an injunction restraining Defendant, its officers, agents, and employees,

25  and all persons acting in concert with Defendant, from engaging in further acts of

26  infringement.

27      38.    Summit is further entitled to recover from Defendant the actual

28  damages that it sustained and/or is likely to sustain as a result of Defendant's

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    wrongful acts.

2       39.    Summit is further entitled to recover from Defendant the gains, profits,

3    and advantages that Defendant has obtained as a result of its wrongful acts.

4       40.    Because of the willful nature of Defendant's wrongful acts, Summit is

5    entitled to an award of punitive damages under the common law.

6                            **THIRD CAUSE OF ACTION**

7         **(Dilution--15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330)**

8       41.    Summit repeats and realleges each and every allegation of paragraphs 1

9    through 40, above, as though fully set forth herein.

10      42.    Summit has used the TWILIGHT Marks to identify its products

11   relating to the *Twilight* Motion Pictures before Defendant began promoting and

12   selling the Twilight Fanzines or otherwise used the TWILIGHT Marks.  The

13   TWILIGHT Marks are inherently distinctive and have acquired distinction through

14   Summit's extensive, continuous, and exclusive use of the TWILIGHT Marks.

15      43.    The TWILIGHT Marks are famous and distinctive within the meaning

16   of 15 U.S.C. §§ 1125(c)(1) and 1127 and Cal. Bus. & Prof. Code § 14330.

17      44.    Defendant's use of the TWILIGHT Marks is likely to dilute the

18   distinctive quality of Summit's mark in violation of  15 U.S.C. § 1125(c) and Cal.

19   Bus. & Prof. Code § 14330.

20      45.    Defendant's acts complained of herein are likely to damage Summit

21   irreparably.  Summit has no adequate remedy at law for such wrongs and injuries.

22   The damage to Summit includes harm to its trademarks, goodwill, and reputation

23   that money cannot compensate.  Summit is, therefore, entitled to a preliminary and

24   permanent injunction enjoining Defendant's use of the TWILIGHT Marks in

25   connection with the promotion, advertisement and sale of any goods by Defendant.

26      46.    Summit is further entitled to recover from Defendant its actual

27   damages sustained by Summit as a result of Defendant's wrongful acts.  Summit is

28   presently unable to ascertain the full extent of the monetary damages it has suffered

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    by reason of Defendant's acts of dilution.

2        47.    Summit is further entitled to recover from Defendant the gains, profits,

3    and advantages Defendant has obtained as a result of its wrongful acts. Summit is

4    presently unable to ascertain the extent of the gains, profits and advantages

5    Defendant has realized by reason of Defendant's willful acts of dilution.

6        48.    Because of the willful nature of Defendant's actions, Summit is

7    entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## FOURTH CAUSE OF ACTION

### (Copyright Infringement)

10       49.    Summit repeats and realleges each and every allegation of paragraphs 1

11   through 48, above, as though fully set forth herein.

12       50.    The Content, Photographs and Poster Images all are original works of

13   authorship owned by Summit and are copyrightable subject matter under the laws

14   of the United States. The Photographs were fixed in a tangible medium by

15   development of the photographs and/or by uploading to a hard drive and publishing

16   the artwork bearing the Photographs. The Content and Photographs comprise unit

17   photography from the *Twilight* Motion Pictures and publicity photographs and/or

18   artwork for publicity of the *Twilight* Motion Pictures. Poster Image I is a publicity

19   photograph and artwork for *New Moon* and Poster Image II is a unit photograph

20   from *New Moon.* The Contents, Photographs, and Poster Images are the subject of

21   valid and pending copyright applications that have been filed on an expedited basis

22   with the U.S. Copyright Office. Summit will amend its complaint to allege the

23   copyright registrations once they issue.

24       51.    Summit is the copyright owner of the Content, Photographs and Poster

25   Images, and at all times relevant to the complaint, Summit is and has been the sole

26   exclusive authorized licensor of the Content, Photographs and Poster Images in the

27   United States in connection with the issuance of licenses for use of the Content,

28   Photographs and Poster Images.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

1    52.    Defendant had access to the Content, Photographs and Poster Images

2    through the Website and through other online resources, and given the wide

3    publication of the Poster Images and the *Twilight* Motion Pictures.

4    53.    Defendant has violated Summit's exclusive rights in and to the

5    Content, Photographs and Poster Images by unlawfully using, reproducing,

6    displaying, and distributing them in the Twilight Fanzines without authorization

7    and by unlawfully preparing derivative works from the Content Defendant accessed

8    on Summit's Website.

9    54.    Upon information and belief, Defendant was at all material times aware

10    that its use of the Content, Photographs and Poster Images, in the absence of a valid

11    license agreement authorizing Defendant to use them in a stand alone commercial

12    product and/or to edit, alter and/or otherwise modify them without Summit's prior

13    written approval, would constitute copyright infringement.  Summit has not granted

14    to Defendant any such right or license.  Defendant's use of the Content,

15    Photographs and Poster Images in the stand alone Twilight Fanzines far exceeds the

16    scope of the limited license that Summit grants to accredited journalists to use

17    Content from its Website "for journalistic purposes" in connection with an article

18    reviewing or commenting on Summit's motion picture(s). Defendant's creation of

19    derivative works from the Content is outside of the limited license and violates the

20    express prohibition in that limited license against editing, altering and/or otherwise

21    modifying the Content without Summit's prior written approval.  Finally,

22    defendant's use of the Photographs that were not part of the Content on the Website

23    is outside of the limited license related to the Website.

24    55.    Summit is informed and believes and on that basis alleges that

25    Defendant had full knowledge that its acts are wrongful and unlawful and has

26    continued to infringe said copyright, throughout the United States and various other

27    territories of the world.  Defendant continued to sell the first Twilight Fanzine and

28    then offered the second Twilight Fanzine for sale on newsstands and retail outlets

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

1  after Summit sent to Defendant the first cease and desist letter informing Defendant

2  that its use of the Photographs and Poster Images infringed its copyrights and

3  trademark rights.  Defendant's respective infringing acts were and continue to be

4  committed willfully.

5      56.    By reason of the foregoing, Summit has suffered damages in an

6  amount to be determined at trial, and is entitled, at its election, to either (a) all

7  damages suffered by Summit, along with all gains, profits and advantages derived

8  by Defendant from the acts of infringement, plus exemplary and punitive damages

9  in amounts to be proven at trial, or (b) statutory damages as provided for in the

10 Copyright Act of the United States.

11     57.    Summit is also entitled to attorneys' fees under the Copyright Act.

12                        **FIFTH CAUSE OF ACTION**

13              **(Statutory and Common Law Unfair Competition)**

14     58.    Summit repeats and realleges each and every allegation of paragraphs 1

15 through 57, above, as though fully set forth herein.

16     59.    By reason of the foregoing, Defendant has been, and is, engaged in

17 "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.*

18 of the California Bus. & Prof. Code and acts of unfair competition in violation of

19 the common law.

20     60.    Defendant's acts complained of herein have damaged and will continue

21 to damage Summit irreparably.  Summit has no adequate remedy at law for these

22 wrongs and injuries.  The damage to Summit includes harm to its trademarks,

23 goodwill, and reputation in the marketplace that money cannot compensate.

24 Summit is therefore entitled to:  (a) injunctive relief restraining and enjoining

25 Defendant and its agents, servants, employees, and attorneys, and all persons acting

26 thereunder, in concert with, or on their behalf, from using the TWILIGHT Marks,

27 any colorable imitation or variation thereof, or any mark, name, symbol, or logo

28 which is confusingly similar thereto, in connection with the marketing or sale of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

any goods or services by Defendant; (b) injunctive relief restraining and enjoining Defendant and its agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on their behalf, from reproducing photographs or other artwork owned by Summit in connection with the marketing or sale of any goods or services by Defendant; (c) Summit's actual damages sustained as a result of Defendant's wrongful acts; (d) an accounting of Defendant's profits from their sales of any products bearing the TWILIGHT Marks or containing copyrighted photographs or other artwork owned by Summit, or any other goods which make use of the TWILIGHT Marks or photographs or other artwork owned by Summit; (d) the award of Defendant's unjust profits, as well as sums sufficient to compensate Summit for all harm suffered as a result of Defendant's conduct; and (e) punitive damages.

### SIXTH CAUSE OF ACTION

### (Breach of Contract)

61.    Summit repeats and realleges each and every allegation of paragraphs 1 through 60, above, as though fully set forth herein.

62.    Summit and Defendant entered into a contract, the terms of which are set out in the <www.summitpublicity.com> Terms of Use (the "Contract").

63.    Summit performed all, or substantially all, of its significant obligations required under the Contract.

64.    Defendant failed to comply with the terms of the Contract by exceeding the limited scope of the license granted in the contract.  Namely, Defendant: (a) used the Content for purposes other than a journalistic use, (b) edited, altered and/or otherwise modified the Content without Summit's prior written approval; (c) used the Content in such a manner that falsely implies Summit's endorsement or sponsorship of the Twilight Fanzines and/or Defendant; and (d) used the TWILIGHT Marks to create stand alone products to which infringes Summit's trademark rights.

65.    Summit has been harmed by Summit's failure to comply with the terms of the Contract.

66.    As a result of Defendant's breach of the Contract, Summit is entitled to equitable remedies, costs and attorneys' fees, in addition to all damages that are provable at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Summit prays that this Court enter judgment against Defendant as follows:

1.    Finding that Defendant has violated 15 U.S.C. § 1125(a) and the common law, has infringed the TWILIGHT Marks under the common law, has infringed Summit's copyrights under 17 U.S.C. § 501, has violated 15 U.S.C. § 1125(c)(1) and Cal. Bus. & Prof. Code § 14330, and has violated Cal. Bus. & Prof. Code § 17200 and the common law by engaging in unlawful, unfair, and fraudulent business practices;

2.    Ordering that Defendant and its subsidiaries, officers, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Defendant or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

a.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods bearing the TWILIGHT Marks or any other mark, name, symbol, or logo which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any goods that Defendant caused to enter the stream of commerce are sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are connected or affiliated in some way with Summit or the *Twilight* Motion Pictures;

b.    Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any goods bearing

1   the TWILIGHT Marks or any other mark, name, symbol, or logo that is a copy or

2   colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT

3   Marks;

4           c.      Falsely implying Summit's endorsement of Defendant's

5   goods or engaging in any act or series of acts which, either alone or in combination,

6   constitutes unfair methods of competition with Summit and from otherwise

7   interfering with, or injuring the TWILIGHT Marks or the goodwill associated

8   therewith;

9           d.      Copying, displaying, featuring, or using the Content,

10  Photographs, Poster Images, or any other copyrightable subject matter from or

11  related to the *Twilight* Motion Pictures, or any works substantially similar thereto,

12  or engaging in any act in violation of Summit's copyrights;

13          e.      Engaging in any act which is likely to dilute the

14  distinctive quality of the TWILIGHT Marks and/or injures Summit's business

15  reputation;

16          f.      Representing or implying that Defendant is in any way

17  sponsored by, affiliated with, or endorsed or licensed by Summit; or

18          g.      Knowingly assisting, inducing, aiding, or abetting any

19  other person or business entity in engaging in or performing any of the activities

20  referred to in paragraphs 2(a) to (f) above.

21      3.      Ordering that Summit is the exclusive owner of the TWILIGHT Marks

22  and that such marks are valid;

23      4.      Ordering that Summit is the exclusive owner of the copyrights in the

24  Content, Photographs and Poster Images and that such copyrights are valid.

25      5.      Ordering that Defendant be required to deliver to Summit for

26  destruction all Twilight Fanzines (including but not limited to all issues of Twilight

27  Fanzines or similar magazines that have been produced even if they have not yet

28  been released), which bear the TWILIGHT Marks or any other trademarks, names,

1  logo, trade dress, or packaging that are confusingly or substantially similar to the

2  TWILIGHT Marks and/or which contain Content, Photographs, Poster Images, or

3  other copyrighted works, the copyrights to which are owned by Summit;

4      6.    Finding that Defendant has breached the Contract with Summit;

5      7.    Granting an award of damages suffered by Summit according to proof

6  at the time of trial;

7      8.    Ordering that Defendant account to Summit for any and all profits

8  earned as a result of Defendant's acts of infringement in violation of Summit's

9  rights under the Lanham Act, the Copyright Act, Cal. Bus. & Prof. Code § 17200,

10  *et seq.*, and the common law;

11      9.    Granting an award of three times the amount of compensatory

12  damages and increased profits pursuant to 15 U.S.C. § 1117;

13      10.    Granting an award of statutory damages pursuant to 17 U.S.C.

14  § 504(c);

15      11.    Granting an award of punitive damages for the willful and wanton

16  nature of Defendant's aforesaid acts;

17      12.    For pre-judgment interest on any recovery by Summit;

18      13.    Granting an award of Summit's costs, expenses, and reasonable

19  attorney's fees; and

20      14.    Granting such other and further relief as is just and proper.

21                    Respectfully submitted,

22                    MANATT, PHELPS & PHILLIPS, LLP

23

24  Dated:  November 4, 2009          By:

25                    Jill M. Pietrini
                    Barry E. Mallen
26                    Kathryn A. Vaclavik
                    Stuart H. Katz
27                    *Attorneys for Plaintiff*
                    SUMMIT ENTERTAINMENT, LLC

28

1

## JURY DEMAND

2

Summit demands a trial by jury of all issues triable by jury.

3

Respectfully submitted,

4

MANATT, PHELPS & PHILLIPS, LLP

5

6

Dated: November 4, 2009

7

By: _Jill R_____

8

Jill M. Pietrini
Barry E. Mallen

9

Kathryn A. Vaclavik
Stuart H. Katz

10

*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

11

12

13

300002675.2

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

19

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>*Plaintiff*<br>v.<br>BECKETT MEDIA, LLC., a Delaware Corporation, and Does 1-10, inclusive<br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

**CV09-8161 PSG (MANx)**

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

**BECKETT MEDIA, LLC**
**4635 McEwen Road**
**Dallas, Texas  75244**

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

**Jill M. Pietrini, Esq. (SBN 138335)**
**Barry E. Mallen (SBN 120005)**
**Kathryn A. Vaclavic (SBN 176250)**
**MANATT, PHELPS & PHILLIPS, LLC**
**11355 West Olympic Boulevard**
**Los Angeles, CA  90064**

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  ___- 8 NOV 2009___

_____
*Signature of Clerk or Deputy Clerk*

American LegalNet, Inc.
www.FormsWorkflow.com

AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $. _____

I declare under penalty of perjury that this information is true.


Date: _____           _____
                                                    *Server's signature*

                                                _____
                                                    *Printed name and title*

                                                _____
                                                    *Server's address*

Additional information regarding attempted service, etc:


300007468.1

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company

**DEFENDANTS**
BECKETT MEDIA, LLC., a Delaware Corporation, and Does 1*10, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MANATT, PHELPS & PHILLIPS, LLP
Jill M. Pietrini (SBN 138335)    jpietrini@manatt.com
Barry E. Mallen (SBN 120005)    bmallen@manatt.com
Kathryn A. Vaclavik (SBN 176250)   kvaclavik@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000; Facsimile: (310) 312-4224

**Attorneys** (If Known)
Joel M. Smith, Esq.
Leopold, Petrich & Smith
2049 Century Park East, Suite 3110
Los Angeles, CA 90067-3274

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for False Designation of Origin – 15 U.S.C. § 1125(a); Trademark Infringement, Dilution--15 U.S.C.§ 1125(c); Cal. Bus. & Prof. Code § 14330; Copyright Infringement; Statutory and Common Law Unfair Competition; and Breach of Contract

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities -- Employment | ☐ 640 R.R.& Truck | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | | ☐ 446 American with Disabilities -- Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV09-8161

FOR OFFICE USE ONLY:    Case Number: _____
AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                     CIVIL COVER SHEET                     Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| **Summit Entertainment, LLC -- Los Angeles, County** | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | **Beckett Media, LLC -- Dallas County** |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: **In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| **All claims -- Los Angeles County** | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_     Date   **November 4, 2009**
Jill M. Pietrini

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

300007514.1

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV09- 8161 PSG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY