1  MANATT, PHELPS & PHILLIPS, LLP
   Jill M. Pietrini (Bar No. CA 138335)
2      jpietrini@manatt.com
   Barry E. Mallen (Bar No. CA 120005)
3      bmallen@manatt.com
   Stuart H. Katz (Bar No. CA 226622)
4      skatz@manatt.com
   11355 West Olympic Boulevard
5  Los Angeles, CA 90064-1614
   Telephone: (310) 312-4000
6  Facsimile: (310) 312-4224

7  *Attorneys for Plaintiff*                    E-FILED 07-09-10
   SUMMIT ENTERTAINMENT, LLC
8

9

10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
                    WESTERN DIVISION
12

13  SUMMIT ENTERTAINMENT, LLC,        Case No. CV09-8161 PSG (MANx)
    a Delaware limited liability company,
14                                     [~~PROPOSED~~] SECOND AMENDED
                  Plaintiff,           COMPLAINT FOR FALSE
15                                     DESIGNATION OF ORIGIN,
          v.                           TRADEMARK INFRINGEMENT,
16                                     TRADEMARK DILUTION,
    BECKETT MEDIA, LLC., a Delaware    COPYRIGHT INFRINGEMENT,
17  Corporation, CURTIS CIRCULATION    UNFAIR COMPETITION, AND
    COMPANY, LLC, a Delaware limited   BREACH OF CONTRACT
18  liability company, UBIQUITY
    DISTRIBUTORS, INC., a New York     **(Demand For Jury Trial)**
19  Corporation, and Does 1-10, inclusive,
20                Defendants.
21

22       Plaintiff Summit Entertainment, LLC ("Summit"), for its second amended

23  complaint against defendant Beckett Media, LLC ("Beckett"), Curtis Circulation

24  Company, LLC ("Curtis"), Ubiquity Distributors, Inc. ("Ubiquity") (collectively,

25  "Defendants") and Does 1-10, alleges as follows:

26                          **JURISDICTION**

27       1.   This action arises under the trademark and anti-dilution laws of the

28  United States, 15 U.S.C. § 1125, *et seq.*; the Copyright Act of 1976, as amended,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1   17 U.S.C. § 101, *et seq.*; and under the statutory and common law of unfair

2   competition.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and

3   (b), and § 1367, 15 U.S.C. § 1121, 17 U.S.C. § 501.  This action arises under the

4   laws of the United States.

5         2.     Venue is proper under 28 U.S.C. §§ 1391(b) and (c) in this case

6   because Summit resides in this District, and on information and belief, Defendants

7   are subject to personal jurisdiction in this District, and a substantial part of the

8   events or omissions giving rise to Summit's claims occurred in this District.

9   <center>**PARTIES**</center>

10        3.     Summit is a Delaware limited liability company having its principal

11  place of business in Santa Monica, California.

12        4.     On information and belief, Beckett is a Delaware corporation having its

13  principal place of business in Anaheim, California.

14        5.     On information and belief, Curtis is a Delaware limited liability

15  company having its principal place of business in New Milford, New Jersey.

16        6.     On information and belief, Ubiquity is a New York corporation having

17  its principal place of business in Brooklyn, New York.

18  <center>**FACTS**</center>

19  **Summit's Business, Trademarks, and Copyrights**

20        7.     Since 1991, Summit and its predecessors have been an active

21  participant in the motion picture industry.  Summit finances, produces and

22  distributes films and related entertainment products.

23        8.     Summit has also been involved in licensing trademarks associated with

24  the motion pictures that it produces and distributes for merchandise sales.

25        9.     Summit produced and distributes the movie *Twilight*, the extremely

26  successful and popular film about a teenage girl, Isabella ("Bella") Swan, who falls

27  in love with a vampire, Edward Cullen.  Bella's other suitor in the film is Jacob

28  Black, a werewolf.  The film was released in the United States on November 21,

MANATT, PHELPS &
PHELPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

<center>2</center>

1  2008, and was promoted for many months prior to its release.  Summit released the

2  second motion picture in the *Twilight* series, *The Twilight Saga:  New Moon* ("*New*

3  *Moon*"), in the United States on November 20, 2009.

4       10.    Summit is the owner of the trademark TWILIGHT in block letters, and

5  in a distinctive stylized font (the "stylized TWILIGHT mark") (collectively "the

6  TWILIGHT Marks") and owns the trademark NEW MOON.  Summit owns

7  36 pending federal trademark applications to register the TWILIGHT Marks and

8  19 pending federal trademark applications to register the NEW MOON trademark

9  for use on various types of goods and services.

10       11.    Summit has licensed the TWILIGHT Marks and the NEW MOON

11  mark to third parties to sell a wide variety of products, including posters, clothing,

12  trading cards and beverageware.  Summit's licensees first sold posters bearing the

13  TWILIGHT Marks in May of 2008, and continue to sell such products.

14       12.    Summit is the copyright owner of both the screenplay and the motion

15  pictures *Twilight* and *New Moon* (the "*Twilight* Motion Pictures"), as well as all

16  publicity, promotional, unit, and special shoot photography related thereto and the

17  trailers for the *Twilight* Motion Pictures.  Summit has licensed its copyrighted

18  photographs to third parties to promote the *Twilight* Motion Pictures, as well as for

19  various items of merchandise related to the *Twilight* Motion Pictures and bearing

20  the TWILIGHT Marks and the NEW MOON mark.

21  **Defendants and Their Infringing Actions**

22       13.    On information and belief, Beckett is a publisher of sports and

23  entertainment collectibles and memorabilia magazines.

24       14.    On information and belief, Beckett distributes its magazines widely in

25  various outlets throughout the United States including corner newsstands,

26  bookstores, grocery stores, drugstores, and other similar retail outlets.  In addition,

27  Beckett operates a website at <www.beckett.com> and sells its magazines from that

28  website as well.

15.    In late August 2009, Summit learned that Beckett was and is selling an 80-page fan magazine entitled *Twilight* (the "first Twilight Fanzine") devoted entirely to stories and articles about the *Twilight* Motion Pictures and the characters and actors from those motion pictures, as well as advertisements for *Twilight* trading cards, dolls and other collectibles. Included in this first Twilight Fanzine are more than 30 unauthorized and unlicensed reproductions of photographs from the *Twilight* Motion Pictures and photographs and artwork produced for promotion of the *Twilight* Motion Pictures (collectively, along with the photographs and artwork described in paragraphs 17 and 23 below, the "Photographs"). Included in the center of the magazine is a removable, approximately 14 x 20½ inch poster, that is an unauthorized and unlicensed reproduction of Summit's promotional photograph and artwork for the *Twilight* sequel, *New Moon* ("Poster Image I"). Appearing in large print as the title on the cover of the first Twilight Fanzine is the TWILIGHT trademark in the same or confusingly similar font as the stylized TWILIGHT mark used by Summit for the *Twilight* Motion Pictures. Beckett has been selling this stand alone Twilight Fanzine for $9.99 per copy. A true and correct copy of the first Twilight Fanzine is attached hereto as **Exhibit A**.

16.    The distinctive font of the stylized TWILIGHT mark is shown below on the left. For comparison, Beckett's infringing use appears on the right.

<table>
<tr><td><strong>Summit's Stylized Mark</strong></td><td><strong>Beckett's Infringing Use</strong></td></tr>
<tr><td></td><td></td></tr>
</table>

17.    On September 1, 2009, Summit sent Beckett a letter demanding that Beckett cease and desist its trademark and copyright infringement. A true and correct copy of Summit's demand letter to Beckett is attached hereto as **Exhibit B**. Beckett failed to respond to Summit's initial letter, and Summit was forced to send a follow-up demand letter on September 17, 2009. A true and correct copy of Summit's second demand letter to Beckett is attached hereto as **Exhibit C**.

18.   On September 22, 2009, Brown Law, LLP in Raleigh, North Carolina, acting on behalf of Beckett, contacted Summit's counsel seeking more time for Beckett to respond to Summit's demand letters, stating that they had just received copies of the demand letters the previous day and had not yet seen a copy of the first Twilight Fanzine. Summit's counsel asked that Beckett's counsel obtain a copy of the first Twilight Fanzine and call the following day to discuss the matter, because Summit urgently needed Beckett to cease producing and selling the first Twilight Fanzine given the large amount of infringing material in it. Beckett did not respond.

19.   On September 29, 2009, Leopold, Petrich & Smith, in Beverly Hills, California, new counsel for Beckett, contacted Summit's counsel, again seeking an extension of time for Beckett to respond to Summit's demand letters, stating that they had just received the matter, had not seen a copy of the first Twilight Fanzine, and counsel was leaving the country until Sunday, October 4, 2009. Summit's counsel conveyed to Beckett's counsel the urgency of Summit's need to have Beckett cease producing and selling the first Twilight Fanzine and agreed to an extension only until Monday, October 5, 2009.

20.   On October 2, 2009, Summit discovered that Beckett had published and was selling a second 80-page Twilight Fanzine, also for $9.99 per copy (the "second Twilight Fanzine," with the first Twilight Fanzine collectively "the Twilight Fanzines"). Like the first Twilight Fanzine, the second Twilight Fanzine is filled with more than 20 unauthorized and unlicensed reproductions of photographs from the *Twilight* Motion Pictures and photographs and artwork produced for promotion of those films (also part of the "Photographs"). Similar to the first Twilight Fanzine, the second Twilight Fanzine includes in the center of the magazine a removable, approximately 14 x 20½ inch, poster that is an unauthorized and unlicensed reproduction of a photograph from *New Moon* ("Poster Image II," with Poster Image I and Poster Image II, collectively, the "Poster Images"). The

1    second Twilight Fanzine also bears as the title in large print on the cover the

2    TWILIGHT trademark in the same or confusingly similar font as the stylized

3    TWILIGHT mark used by Summit for the *Twilight* Motion Pictures.  A true and

4    correct copy of the second Twilight Fanzine is attached hereto as **Exhibit D**.

5           21.    On October 5, 2009, Beckett's counsel represented that the first

6    Twilight Fanzine was authorized based on Beckett's access to Summit's publicity

7    website at www.summitpublicity.com (the "Website").  The Website contains,

8    among other things, downloadable copyrighted photographs and other artwork from

9    or related to the *Twilight* Motion Pictures of which Summit is the copyright owner

10   (the "Content").  The Website and the Content thereon are intended for use only by

11   legitimate journalists who are reviewing or commenting on Summit's films.  The

12   Terms of Use of the Website specifically state that the Content from the Website

13   may be used "only for journalistic purposes in connection with and/or related to

14   motion pictures and other entertainment programming distributed by Summit."  The

15   Terms of Use do not include permission to allow third parties to merchandise the

16   *Twilight* Motion Pictures, as Defendant has done and continues to do.

17          22.    Beckett requested a password and permission to use the Website for

18   "newsstand magazine coverage."  Beckett was granted a password and permission

19   based on that request and under the Terms of Use for the Website, to which Beckett

20   expressly agreed when it signed on to the Website for the first time.  The Terms of

21   Use grant the right to use Content from the Website solely "for journalistic

22   purposes" in connection with an article reviewing or commenting on Summit's

23   motion picture(s).  Paragraph 2 of the Terms of Use for the Website states: "you

24   agree that: (a) you will not edit, alter or modify any of the Content without

25   Summit's prior written approval; . . . and (d) you will not use the Content or the

26   names, images, likeness or biographical images of the performers in the Program in

27   any manner which could constitute an express, direct or indirect tie-in or

28   endorsement of any product, service, sponsor or of your media outlet."  The Terms

1   of Use also provide: "Unauthorized use [of] the Content may be a violation of law

2   which may result in civil and criminal liability.  Summit has the right to enforce its

3   intellectual property rights to the fullest extent of the law."  Paragraph 12 of the

4   Terms of Use for the Website provides: "You agree that a breach by you of any of

5   your undertakings under these Terms would cause Summit damage which could not

6   readily be remedied by an action at law and might, in addition, constitute an

7   infringement of copyright and/or trademark and/or other applicable laws, and/or a

8   violation of moral rights (where applicable).  Any such breach would, therefore,

9   entitle Summit to equitable remedies, costs and attorneys' fees in addition to any

10  other rights and remedies provided herein or by law."  A true and correct copy of

11  the Terms of Use for the Website is hereto as **Exhibit E**.

12      23.   Beckett's use of Summit's copyrighted material and trademarks is not

13  for a journalistic purpose.  Even if it had some modicum of journalistic purpose,

14  Beckett's use goes far beyond a journalistic use and therefore exceeds the scope of

15  the limited license that Summit grants to accredited journalists to use Content from

16  the Website.  Beckett has used a vast amount of Summit's copyrighted works and

17  the TWILIGHT Marks to create stand alone products, the Twilight Fanzines, for

18  commercial, not journalistic, purposes.  Beckett's extensive use of Summit's

19  copyrighted material in these stand alone products is such that it creates the false

20  impression that Summit endorsed, licensed or sponsored the Twilight Fanzines

21  and/or Beckett.

22      24.   Beckett also has edited, altered and/or modified Summit's copyrighted

23  material without Summit's prior written approval.  The first Twilight Fanzine

24  includes at least 14 images that have been created by editing, altering, and/or

25  modifying Summit's copyrighted material without Summit's prior written approval,

26  and the second Twilight Fanzine includes at least an additional seven images that

27  have been created by editing, altering, and/or modifying Summit's copyrighted

28  material without Summit's prior written approval.  Summit's copyrighted materials

1   have been altered, among other ways, by cropping single images from broader
2   photographs, changing color schemes of photographs, changing the backgrounds
3   appearing behind characters in the photographs, creating collages from single
4   photographs, and superimposing lettering and other designs over the images in the
5   photographs.  Examples of such alterations in the first Twilight Fanzine appear on
6   the front cover, the back of the front cover, and on pages 1, 10-11, 12-13, 20, 26,
7   28-29, 30, 32, and 53.  Examples of such alterations in the second Twilight Fanzine
8   appear on the front cover and on pages 12-13, 24-25, 42-43, and 62.

9       25.    Beckett has used in the Twilight Fanzines copyrighted material owned
10  by Summit, including photographs and other artwork related to the *Twilight* Motion
11  Pictures that are not part of the Content on the Website (also part of the
12  "Photographs") and therefore were never covered in any way by the limited scope
13  license granted in connection with the Content on the Website.  At least eight of the
14  Photographs in first Twilight Fanzine and at least five of the Photographs in the
15  second Twilight Fanzine are not part of the Content included on the Website and
16  thus were never within the scope of even the limited license granted pursuant to the
17  Terms of Use for the Website.

18      26.    Beckett's actions were willful.  Prior to publishing the first Twilight
19  Fanzine, Beckett contacted Summit's licensee for trading cards to find out the
20  identity of the licensor of the *Twilight* property.  Beckett was given the contact
21  information for Summit, but did not seek a proper license from Summit before
22  publishing the Twilight Fanzines.  Beckett then proceeded to copy and post all 72
23  Twilight trading cards of Summit in the first Twilight Fanzine.  Even after
24  notification of Summit's objection to the first Twilight Fanzine, Beckett published
25  and/or distributed the second Twilight Fanzine.  On information and belief, Beckett
26  intends to publish six more issues of Twilight Fanzines despite Summit's clear
27  objections to the first two Twilight Fanzines.

28      27.    Summit learned that Beckett is now selling the printing plates for the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

1    Twilight Fanzines on eBay and on Defendant's website.  On information and belief,

2    Beckett posted the magazine printing plate for the first Twilight Fanzine in October

3    2009, well after Beckett was put on notice of Summit's claims.  In early November

4    2009, Summit learned that Beckett was selling the printing plate for the second

5    Twilight Fanzine on eBay, and on Beckett's website.  True and correct copies of the

6    eBay listing and the listing on Beckett's website for the printing plates are attached

7    hereto as **Exhibit F**.

8         28.   On information and belief, Curtis and Ubiquity are national distributors

9    of magazines.  Beckett used Curtis to distribute the Twilight Fanzines and Ubiquity

10   is a sub-distributor of Curtis that was also used to distribute the Twilight Fanzines.

11        29.   On information and belief, Curtis and Ubiquity had knowledge of the

12   TWILIGHT Marks and copyrights that are the subject of this action.

13        30.   On information and belief, Curtis and Ubiquity knowingly and

14   willfully distributed the Twilight Fanzines without authorization from Summit and

15   Curtis and Ubiquity profited from the infringements alleged herein by distributing

16   the Twilight Fanzines.

17                          **FIRST CAUSE OF ACTION**

18                            **(As to all Defendants)**

19          **(False Designation of Origin – 15 U.S.C. § 1125(a))**

20        31.   Summit repeats and realleges each and every allegation of paragraphs 1

21   through 30, above, as though fully set forth herein.

22        32.   Defendants' actions as alleged herein constitute a false designation of

23   origin in violation of 15 U.S.C. § 1125(a).

24        33.   The use of the TWILIGHT Marks by Defendants constitutes a false

25   designation of origin and a false description or representation that wrongfully and

26   falsely designates the Twilight Fanzines as originating from Summit, or being

27   associated with, licensed by, or authorized by Summit.

28        34.   As a direct and proximate result of Defendants' wrongful acts, Summit

1   has suffered and continues to suffer and/or is likely to suffer damage to its

2   trademarks, business reputation, and goodwill.  Defendants will continue to use

3   and/or will restart the use of, unless restrained, the TWILIGHT Marks and will

4   cause irreparable damage to Summit.  Summit has no adequate remedy at law and is

5   entitled to an injunction restraining Defendants, their officers, agents, and

6   employees, and all persons acting in concert with  Defendants, from engaging in

7   further acts of false designation of origin.

8        35.    Summit is further entitled to recover from Defendants the actual

9   damages that it sustained and/or is likely to sustain as a result of Defendants'

10   wrongful acts.  Summit is presently unable to ascertain the full extent of the

11   monetary damages that it has suffered and/or is likely to sustain by reason of

12   Defendants' acts of false designation of origin.

13       36.    Summit is further entitled to recover from Defendants the gains,

14   profits, and advantages that Defendants have obtained as a result of their wrongful

15   acts.  Summit is presently unable to ascertain the extent of the gains, profits, and

16   advantages that Defendants have realized by reason of their acts of false

17   designation of origin.

18       37.    Because of the willful nature of Defendants' wrongful acts, Summit is

19   entitled to an award of treble damages and increased profits pursuant to 15 U.S.C.

20   § 1117 and destruction of the Twilight Fanzines under 15 U.S.C. § 1118.

21       38.    Summit is also entitled to recover its attorneys' fees and costs of suit

22   pursuant to 15 U.S.C. § 1117.

23                    **SECOND CAUSE OF ACTION**

24                      **(As to all Defendants)**

25                    **(Trademark Infringement)**

26       39.    Summit repeats and realleges each and every allegation of paragraphs

27   1 through 38, above, as though fully set forth herein.

28       40.    Beckett has used in commerce, without Summit's permission, the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

1  TWILIGHT Marks in a manner that is likely to cause confusion with respect to the

2  source and origin of the Twilight Fanzines and is likely to cause confusion or

3  mistake and to deceive purchasers as to the affiliation, connection, or association of

4  Summit with Beckett and/or its products.

5      41.    On information and belief, Curtis and Ubiquity distributed the Twilight

6  Fanzines without authorization from Summit.

7      42.    Defendants' acts constitute infringement of the TWILIGHT Marks in

8  violation of the common law.

9      43.    As a direct and proximate result of Defendants' wrongful acts, Summit

10  has suffered and continues to suffer and/or is likely to suffer damage to its

11  trademark, business reputation, and goodwill.  Defendants' will continue to use

12  and/or will restart the use of, unless restrained, the TWILIGHT Marks and will

13  cause irreparable damage to Summit.  Summit has no adequate remedy at law and is

14  entitled to an injunction restraining Defendants', their officers, agents, and

15  employees, and all persons acting in concert with Defendants, from engaging in

16  further acts of infringement.

17      44.    Summit is further entitled to recover from Defendants the actual

18  damages that it sustained and/or is likely to sustain as a result of Defendants'

19  wrongful acts.

20      45.    Summit is further entitled to recover from Defendants the gains,

21  profits, and advantages that Defendants have obtained as a result of their wrongful

22  acts.

23      46.    Because of the willful nature of Defendants' wrongful acts, Summit is

24  entitled to an award of punitive damages under the common law.

25              **THIRD CAUSE OF ACTION**

26                  **(As to all Defendants)**

27      **(Dilution--15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330)**

28      47.    Summit repeats and realleges each and every allegation of paragraphs 1

1 through 46, above, as though fully set forth herein.

2      48.    Summit has used the TWILIGHT Marks to identify its products

3 relating to the *Twilight* Motion Pictures before Defendants began promoting and

4 selling the Twilight Fanzines or otherwise used the TWILIGHT Marks.  The

5 TWILIGHT Marks are inherently distinctive and have acquired distinction through

6 Summit's extensive, continuous, and exclusive use of the TWILIGHT Marks.

7      49.    The TWILIGHT Marks are famous and distinctive within the meaning

8 of 15 U.S.C. §§ 1125(c)(1) and 1127 and Cal. Bus. & Prof. Code § 14330.

9      50.    Defendants' use of the TWILIGHT Marks is likely to dilute the

10 distinctive quality of Summit's marks in violation of  15 U.S.C. § 1125(c) and Cal.

11 Bus. & Prof. Code § 14330.

12      51.    Defendants' acts complained of herein are likely to damage Summit

13 irreparably.  Summit has no adequate remedy at law for such wrongs and injuries.

14 The damage to Summit includes harm to its trademarks, goodwill, and reputation

15 that money cannot compensate.  Summit is, therefore, entitled to a preliminary and

16 permanent injunction enjoining Defendants' 's use of the TWILIGHT Marks in

17 connection with the promotion, advertisement and sale of any goods by Defendants.

18      52.    Summit is further entitled to recover from Defendants  its actual

19 damages sustained by Summit as a result of Defendants'  wrongful acts.  Summit is

20 presently unable to ascertain the full extent of the monetary damages it has suffered

21 by reason of Defendants'  acts of dilution.

22      53.    Summit is further entitled to recover from Defendants  the gains,

23 profits, and advantages Defendants  have obtained as a result of their wrongful acts.

24 Summit is presently unable to ascertain the extent of the gains, profits and

25 advantages Defendants  have realized by reason of Defendants'  willful acts of

26 dilution.

27      54.    Because of the willful nature of Defendants'  actions, Summit is

28 entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

# FOURTH CAUSE OF ACTION

## (As to all Defendants)

## (Copyright Infringement)

55.    Summit repeats and realleges each and every allegation of paragraphs 1 through 54, above, as though fully set forth herein.

56.    The Content, Photographs and Poster Images all are original works of authorship owned by Summit and are copyrightable subject matter under the laws of the United States.  The Photographs were fixed in a tangible medium by development of the photographs and/or by uploading to a hard drive and publishing the artwork bearing the Photographs.  The Content and Photographs comprise unit photography from the *Twilight* Motion Pictures and publicity photographs and/or artwork for publicity of the *Twilight* Motion Pictures.  Poster Image I is a publicity photograph and artwork for *New Moon* and Poster Image II is a unit photograph from *New Moon.*  The Contents, Photographs, and Poster Images are the subject of valid and pending copyright applications that have been filed on an expedited basis with the U.S. Copyright Office.  Summit will amend its complaint to allege the copyright registrations once they issue.

57.    Summit is the copyright owner of the Content, Photographs and Poster Images, and at all times relevant to the complaint, Summit is and has been the sole exclusive authorized licensor of the Content, Photographs and Poster Images in the United States in connection with the issuance of licenses for use of the Content, Photographs and Poster Images.

58.    On November 4, 5, and 6, 2009 and June 10, 2010, Summit registered the copyrights and submitted a copyright application in the various works infringed by Beckett and identified in the following copyright registrations and application:

| Registration Number | Registration Date |
| --- | --- |
| PA-1-649-176 | November 4, 2009 |
| PA-1-649-177 | November 4, 2009 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| PA-1-649-179 | November 4, 2009 |
| VA-1-689-425 | November 5, 2009 |
| VA-1-688-954 | November 6, 2009 |
| VA-1-688-955 | November 6, 2009 |
| VA-1-688-958 | November 6, 2009 |
| VA-1-688-960 | November 6, 2009 |
| VA-1-688-962 | November 6, 2009 |
| VA-1-688-963 | November 6, 2009 |
| VA-1-689-465 | November 6, 2009 |
| VA-1-689-468 | November 6, 2009 |
| VA-1-689-472 | November 6, 2009 |
| VA-1-689-474 | November 6, 2009 |
| VA-1-689-488 | November 6, 2009 |
| VA-1-689-491 | November 6, 2009 |
| VA-1-689-492 | November 6, 2009 |
| VA-1-689-494 | November 6, 2009 |
| Service Request/Case No. 1-419803272 | June 10, 2010 |

Such registrations and application are valid and subsisting.  True and correct copies of Summit's copyright registrations and application listed above are attached hereto as **Exhibit G**.

59.     Beckett had access to the Content, Photographs and Poster Images through the Website and through other online resources, and given the wide publication of the Poster Images and the *Twilight* Motion Pictures.

60.     Beckett has violated Summit's exclusive rights in and to the Content, Photographs and Poster Images by unlawfully using, reproducing, displaying, and distributing them in the Twilight Fanzines without authorization and by unlawfully

1  preparing derivative works from the Content Beckett accessed on Summit's

2  Website.

3      61.    Upon information and belief, Beckett was at all material times aware

4  that its use of the Content, Photographs and Poster Images, in the absence of a valid

5  license agreement authorizing Beckett to use them in a stand alone commercial

6  product and/or to edit, alter and/or otherwise modify them without Summit's prior

7  written approval, would constitute copyright infringement.  Summit has not granted

8  to Beckett any such right or license.  Beckett's use of the Content, Photographs and

9  Poster Images in the stand alone Twilight Fanzines far exceeds the scope of the

10 limited license that Summit grants to accredited journalists to use Content from its

11 Website "for journalistic purposes" in connection with an article reviewing or

12 commenting on Summit's motion picture(s). Beckett's creation of derivative works

13 from the Content is outside of the limited license and violates the express

14 prohibition in that limited license against editing, altering and/or otherwise

15 modifying the Content without Summit's prior written approval.  Finally, Beckett's

16 use of the Photographs that were not part of the Content on the Website is outside

17 of the limited license related to the Website.

18     62.    Summit is informed and believes and on that basis alleges that Beckett

19 had full knowledge that its acts are wrongful and unlawful and has continued to

20 infringe said copyright, throughout the United States and various other territories of

21 the world.  Beckett continued to sell the first Twilight Fanzine and then offered the

22 second Twilight Fanzine for sale on newsstands and retail outlets <u>after</u> Summit sent

23 to Beckett the first cease and desist letter informing Beckett that its use of the

24 Photographs and Poster Images infringed its copyrights and trademark rights.

25 Beckett's respective infringing acts were and continue to be committed willfully.

26     63.    On information and belief, Curtis and Ubiquity distributed the Twilight

27 Fanzines without authorization from Summit.

28     64.    By reason of the foregoing, Summit has suffered damages in an

1    amount to be determined at trial, and is entitled, at its election, to either (a) all

2    damages suffered by Summit, along with all gains, profits and advantages derived

3    by Defendants from the acts of infringement, plus exemplary and punitive damages

4    in amounts to be proven at trial, or (b) statutory damages as provided for in the

5    Copyright Act of the United States.

6        65.    Summit is also entitled to attorneys' fees under the Copyright Act.

## FIFTH CAUSE OF ACTION

### (As to All Defendants)

### (Statutory and Common Law Unfair Competition)

10       66.    Summit repeats and realleges each and every allegation of paragraphs 1

11   through 65, above, as though fully set forth herein.

12       67.    By reason of the foregoing, Defendants have been, and are, engaged in

13   "unlawful, unfair or fraudulent business practices" in violation of §§ 17200 *et seq.*

14   of the California Bus. & Prof. Code and acts of unfair competition in violation of

15   the common law.

16       68.    Defendants' acts complained of herein have damaged and will

17   continue to damage Summit irreparably.  Summit has no adequate remedy at law

18   for these wrongs and injuries.  The damage to Summit includes harm to its

19   trademarks, goodwill, and reputation in the marketplace that money cannot

20   compensate.  Summit is therefore entitled to:  (a) injunctive relief restraining and

21   enjoining Defendants  and their agents, servants, employees, and attorneys, and all

22   persons acting thereunder, in concert with, or on their behalf, from using the

23   TWILIGHT Marks, any colorable imitation or variation thereof, or any mark, name,

24   symbol, or logo which is confusingly similar thereto, in connection with the

25   marketing or sale of any goods or services by Defendants ; (b) injunctive relief

26   restraining and enjoining Defendants  and their agents, servants, employees, and

27   attorneys, and all persons acting thereunder, in concert with, or on their behalf,

28   from reproducing photographs or other artwork owned by Summit in connection

1  with the marketing or sale of any goods or services by Defendants ; (c) Summit's

2  actual damages sustained as a result of Defendants' wrongful acts; (d) an

3  accounting of Defendants' profits from their sales of any products bearing the

4  TWILIGHT Marks or containing copyrighted photographs or other artwork owned

5  by Summit, or any other goods which make use of the TWILIGHT Marks or

6  photographs or other artwork owned by Summit; (d) the award of Defendants'

7  unjust profits, as well as sums sufficient to compensate Summit for all harm

8  suffered as a result of Defendants' conduct; and (e) punitive damages.

9  <center>**SIXTH CAUSE OF ACTION**</center>

10  <center>**(As to Beckett)**</center>

11  <center>**(Breach of Contract)**</center>

12      69.    Summit repeats and realleges each and every allegation of paragraphs

13  1 through 61, above, as though fully set forth herein.

14      70.    Summit and Beckett entered into a contract, the terms of which are set

15  out in the <www.summitpublicity.com> Terms of Use (the "Contract").

16      71.    Summit performed all, or substantially all, of its significant obligations

17  required under the Contract.

18      72.    Beckett failed to comply with the terms of the Contract by exceeding

19  the limited scope of the license granted in the contract. Namely, Beckett: (a) used

20  the Content for purposes other than a journalistic use, (b) edited, altered and/or

21  otherwise modified the Content without Summit's prior written approval; (c) used

22  the Content in such a manner that falsely implies Summit's endorsement or

23  sponsorship of the Twilight Fanzines and/or Beckett; and (d) used the TWILIGHT

24  Marks to create stand alone products to which infringes Summit's trademark rights.

25      73.    Summit has been harmed by Summit's failure to comply with the

26  terms of the Contract.

27      74.    As a result of Beckett's breach of the Contract, Summit is entitled to

28  equitable remedies, costs and attorneys' fees, in addition to all damages that are

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

17

1    provable at trial.

2                            **PRAYER FOR RELIEF**

3          WHEREFORE, Summit prays that this Court enter judgment against

4    Defendant as follows:

5          1.     Finding that Defendants  have violated 15 U.S.C. § 1125(a) and the

6    common law, have infringed the TWILIGHT Marks under the common law, have

7    infringed Summit's copyrights under 17 U.S.C. § 501, have violated 15 U.S.C. §

8    1125(c)(1) and Cal. Bus. & Prof. Code § 14330, and have violated Cal. Bus. &

9    Prof. Code § 17200 and the common law by engaging in unlawful, unfair, and

10   fraudulent business practices;

11         2.     Ordering that Defendants and their subsidiaries, officers, agents,

12   servants, directors, employees, servants, partners, representative, assigns,

13   successors, related companies, and attorneys and all persons in active concert or

14   participation with Defendants or with any of the foregoing be enjoined

15   preliminarily during the pendency of this action and permanently thereafter from:

16                     a.     Manufacturing, transporting, promoting, importing,

17   advertising, publicizing, distributing, offering for sale, or selling any goods bearing

18   the TWILIGHT Marks or any other mark, name, symbol, or logo which is likely to

19   cause confusion or to cause mistake or to deceive persons into the erroneous belief

20   that any goods that Defendants caused to enter the stream of commerce are

21   sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are

22   connected or affiliated in some way with Summit or the *Twilight* Motion Pictures;

23                     b.     Manufacturing, transporting, promoting, importing,

24   advertising, publicizing, distributing, offering for sale, or selling any goods bearing

25   the TWILIGHT Marks or any other mark, name, symbol, or logo that is a copy or

26   colorable imitation of, incorporates, or is confusingly similar to the TWILIGHT

27   Marks;

28                     c.     Falsely implying Summit's endorsement of Defendants'

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1  goods or engaging in any act or series of acts which, either alone or in combination,

2  constitutes unfair methods of competition with Summit and from otherwise

3  interfering with, or injuring the TWILIGHT Marks or the goodwill associated

4  therewith;

5          d.     Copying, displaying, featuring, or using the Content,

6  Photographs, Poster Images, or any other copyrightable subject matter from or

7  related to the *Twilight* Motion Pictures, or any works substantially similar thereto,

8  or engaging in any act in violation of Summit's copyrights;

9          e.     Engaging in any act which is likely to dilute the

10  distinctive quality of the TWILIGHT Marks and/or injures Summit's business

11  reputation;

12          f.     Representing or implying that Defendants are in any way

13  sponsored by, affiliated with, or endorsed or licensed by Summit; or

14          g.     Knowingly assisting, inducing, aiding, or abetting any

15  other person or business entity in engaging in or performing any of the activities

16  referred to in paragraphs 2(a) to (f) above.

17      3.     Ordering that Summit is the exclusive owner of the TWILIGHT Marks

18  and that such marks are valid;

19      4.     Ordering that Summit is the exclusive owner of the copyrights in the

20  Content, Photographs and Poster Images and that such copyrights are valid.

21      5.     Ordering that Defendants be required to deliver to Summit for

22  destruction all Twilight Fanzines (including but not limited to all issues of Twilight

23  Fanzines or similar magazines that have been produced even if they have not yet

24  been released), which bear the TWILIGHT Marks or any other trademarks, names,

25  logo, trade dress, or packaging that are confusingly or substantially similar to the

26  TWILIGHT Marks and/or which contain Content, Photographs, Poster Images, or

27  other copyrighted works, the copyrights to which are owned by Summit;

28      6.     Finding that Beckett has breached the Contract with Summit;

7.      Granting an award of damages suffered by Summit according to proof at the time of trial;

8.      Ordering that Defendants account to Summit for any and all profits earned as a result of Defendants' acts of infringement in violation of Summit's rights under the Lanham Act, the Copyright Act, Cal. Bus. & Prof. Code § 17200, *et seq.*, and the common law;

9.      Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

10.     Granting an award of statutory damages pursuant to 17 U.S.C. § 504(c);

11.     Granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts;

12.     For pre-judgment interest on any recovery by Summit;

13.     Granting an award of Summit's costs, expenses, and reasonable attorney's fees; and

14.     Granting such other and further relief as is just and proper.

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

Dated:  July 7, 2010

By: /s/Jill M. Pietrini
Jill M. Pietrini
Barry E. Mallen
Stuart H. Katz
*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

1

## JURY DEMAND

2

Summit demands a trial by jury of all issues triable by jury.

3

Respectfully submitted,

4

MANATT, PHELPS & PHILLIPS, LLP

5

6

Dated:  July 7, 2010

7

By: /s/Jill M. Pietrini

Jill M. Pietrini
8
Barry E. Mallen
Stuart H. Katz
9
*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC
10

11

12

13

14

300117303.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES