MANATT, PHELPS & PHILLIPS, LLP
Jill M. Pietrini (Bar No. CA 138335)
   jpietrini@manatt.com
Barry E. Mallen (Bar No. CA 120005)
   bmallen@manatt.com
Diana Iorlano (Bar No. CA 193359)
   diorlano@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

E-FILED 03/11/11

JS-6

*Attorneys for Plaintiff*
SUMMIT ENTERTAINMENT, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

|  |  |
|---|---|
| SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>           Plaintiff,<br><br>   v.<br><br>BECKETT MEDIA, LLC., a Delaware limited liability company, CURTIS CIRCULATION COMPANY, LLC, a Delaware limited liability company, UBIQUITY DISTRIBUTORS, INC., a New York Corporation, and Does 1-10, inclusive,<br><br>           Defendants. | Case No. CV09-8161 PSG (MANx)<br><br><br><br>**STIPULATED JUDGMENT AND PERMANENT INJUNCTION** |

IT IS HEREBY STIPULATED by and between Plaintiff Summit Entertainment, LLC ("Summit") and Defendants Beckett Media, LLC ("Beckett"), Curtis Circulation Company, LLC ("Curtis"), and Ubiquity Distributors, Inc., ("Ubiquity") (collectively, "Defendants"), that a Judgment shall be entered to fully and finally dispose of this Civil Action and that the Judgment be as follows:

1    WHEREAS, Summit produced and distributed the motion pictures *Twilight*,

2   *The Twilight Saga: New Moon*, and *The Twilight Saga: Eclipse* (collectively, the

3   "*Twilight* Motion Pictures"). Summit claims to own numerous intellectual property

4   rights related to the *Twilight* Motion Pictures;

5    WHEREAS, Summit claims to own the trademarks TWILIGHT, NEW

6   MOON, ECLIPSE and BREAKING DAWN in block letters and the TWILIGHT

7   stylized mark, as shown below (which are collectively referred to herein as the

8   "Twilight Marks"):

9

10

11

12   The term "Twilight Marks" includes only those marks or trademark interests that

13   are owned by Summit;

14    WHEREAS, Summit claims to own copyrights in the trailers and full-length

15   films for the *Twilight* Motion Pictures, as well as for publicity, promotional, unit,

16   and special shoot photography and artwork related to the *Twilight* Motion Pictures

17   (the "Twilight Copyrights"). The term "Twilight Copyrights" includes only those

18   works of authorship or copyright interests owned by Summit;

19    WHEREAS, the Twilight Marks and Twilight Copyrights are referred to

20   collectively herein as "the Twilight Intellectual Property";

21    WHEREAS, on November 6, 2009, Summit filed a complaint in this action

22   against Beckett seeking damages and injunctive relief for allegations of false

23   designation of origin, trademark infringement, trademark dilution, copyright

24   infringement, unfair competition, and breach of contract based upon, among other

25   things, Beckett's two publications published in 2009, each of which was entitled

26   "Beckett Teen Sensations Presents: Twilight Unofficial Collector's Guide" (the

27   "Disputed Publications") and printing plates therefor ("Printing Plates");

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

1    WHEREAS, on January 13, 2010, Summit filed a first amended complaint

2 against Beckett;

3    WHEREAS, on January 15, 2010, the Court entered a preliminary injunction

4 ("Preliminary Injunction");

5    WHEREAS, on July 9, 2010, Summit filed a second amended complaint

6 ("SAC") against Beckett, adding Curtis and Ubiquity as defendants in this Civil

7 Action;

8    WHEREAS, Summit and Defendants have entered into a settlement

9 agreement dated March 10, 2011 (the "Agreement") with the mutual intention of

10 resolving all disputes between them which arise from the allegations of the SAC;

11    WHEREAS, this Court has jurisdiction over the subject matter of this

12 controversy pursuant to 15 U.S.C. § 1121(a) (Lanham Act jurisdiction), 17 U.S.C. §

13 501 (Copyright Act jurisdiction), 28 U.S.C. § 1331 (federal question jurisdiction),

14 28 U.S.C. § 1338(a) (trademark and copyright jurisdiction) and 28 U.S.C. § 1338(b)

15 (unfair competition jurisdiction);

16    THE COURT HEREBY ORDERS, ADJUDGES AND DECREES:

17    1.    Permanent Injunction Against Beckett.  Beckett and its officers,

18 directors, servants, employees, subsidiaries, representatives, members, successors,

19 assigns, attorneys, agents, and all persons in active concert or participation with

20 Beckett or with any of the foregoing, including distributors, subdistributors,

21 wholesalers, and resellers aka dealers are hereby permanently enjoined from:

22    (a)    Publishing, distributing, displaying, selling, or offering for sale

23 the Disputed Publications or the Printing Plates, or copying, displaying, exhibiting,

24 distributing, or using the content, photographs, poster images, or any other

25 copyrightable subject matter owned by Summit from, related to, or produced or

26 generated in connection with the *Twilight* Motion Pictures or any other sequels to

27 the *Twilight* Motion Pictures, or engaging in any act that infringes the Twilight

28 Copyrights; this Paragraph 1(a) shall not preclude the use of any copyrightable

1    subject matter related to the *Twilight* Motion Pictures in a manner that constitutes

2    permissible "fair use" under 17 U.S.C. § 107;

3            (b)    Manufacturing, transporting, promoting, importing, advertising,

4    marketing, publicizing, distributing, exhibiting, displaying, offering for sale or

5    selling any good or service that uses, or is offered under, any of the Twilight Marks,

6    or any other mark, name, symbol, design or logo in a way that is likely to cause

7    confusion or to cause mistake or to deceive persons into the erroneous belief that

8    any goods or services that Beckett caused to enter the stream of commerce are

9    sponsored, licensed, or endorsed by Summit, are authorized by Summit, or are

10   connected or affiliated with Summit, or the *Twilight* Motion Pictures;  this

11   Paragraph 1(b) shall not preclude Beckett from displaying advertisements bearing

12   the Twilight Marks where the prospective advertiser is licensed by Summit to use

13   the Twilight Marks or Beckett reasonably believes, after due diligence, that the

14   prospective advertiser is licensed by Summit to use the Twilight Marks;

15            (c)    Falsely representing or implying Summit's endorsement,

16   sponsorship, license, or approval of, or Summit's affiliation with, any of Beckett's

17   commercial activities or goods or services;

18            (d)    Falsely representing or implying that Beckett is in any way

19   sponsored by, affiliated with, or endorsed or licensed by Summit, or that Beckett or

20   its products are affiliated or connected with the *Twilight* Motion Pictures;

21            (e)    Seeking to register any of the Twilight Marks or any other mark,

22   name, symbol, design or logo which is likely to cause confusion or to cause mistake

23   or to deceive persons into the erroneous belief that the businesses, goods or services

24   of Beckett is sponsored or endorsed or authorized by Summit;

25            (f)    Knowingly assisting, inducing, aiding or abetting any person or

26   business entity in engaging in or performing any of the prohibited activities referred

27   to in Paragraphs 1 (a) to (d), inclusive, above.

28

(g)     Except as provided in Paragraph 1(f) above, in no case shall Beckett be deemed to be in violation of this Judgment by reason of Beckett's agents, distributors, subdistributors, wholesalers or resellers aka dealers (collectively, "Distributors"), committing any acts that Summit alleges violates Paragraphs 1 (a) to (d);

(h)     Beckett shall have no duty to serve a copy of this Judgment on any person or to notify any other entity of the Judgment; however, Beckett shall notify its officers, directors, employees and members of this Judgment and of the relevant provisions of the Agreement;

(i)     For the avoidance of doubt, any distributor, wholesaler, subdistributor, or reseller aka dealer that carries, sells, or distributes a Beckett publication is deemed to be a distributor, wholesaler, sub-distributor or reseller aka dealer of Beckett;

(j)     For the further avoidance of doubt, distributors, subdistributors, wholesalers, and resellers aka dealers shall not be subject to the terms of this Judgment with respect to material not produced, published, or provided by Beckett.

2.     Permanent Injunction Against Curtis and Ubiquity. Curtis and Ubiquity and their respective officers, directors, servants, employees, subsidiaries, representatives, members, successors, assigns, attorneys, agents, and all persons in active concert or participation with Curtis or Ubiquity or with any of the foregoing, are hereby permanently enjoined from transporting, promoting, importing, advertising, marketing, publicizing, distributing, exhibiting, displaying, offering for sale or selling, or taking or placing allocations for sales of, making, facilitating or otherwise placing sales of, advertising, promoting, arranging for or otherwise facilitating the shipment, sale or distribution of, the Disputed Publications, or any other publication of Beckett that (i) constitutes a violation of Paragraphs 1(a) to (d) of this Judgment, and (ii) whose cover page or wrapper represents that the publication features the *Twilight* Motion Pictures. Notwithstanding the foregoing,

Curtis and Ubiquity shall be permitted and entitled to process returns and return credits for the Disputed Publications. Nothing in this Paragraph 2 shall impose a duty on Curtis or Ubiquity to conduct a further recall of the Disputed Publications. Curtis and Ubiquity shall have no duty to serve a copy of this Judgment on any person or to notify any other entity of the Judgment; however, Curtis and Ubiquity shall notify its officers, directors, employees, and members of this Judgment and of the relevant provisions of the Agreement.

3.     <u>Destruction of Infringing Articles</u>.  Defendants shall use their best efforts to (a) destroy all physical copies of the Disputed Publications and the Printing Plates in their possession, as well as any physical copies of promotional and marketing artwork and materials regarding the Disputed Publications and the Printing Plates; and (b) delete all electronic media under their possession, custody or control that constitutes a part of the Disputed Publications, the Printing Plates, the Twilight Copyrights, or a use in commerce of the Twilight Marks (including, without limitation, web pages, metatags, search tags, social networking sites, computer files in any format).

4.     <u>Attorneys' Fees and Costs</u>.  Each party shall bear its own attorneys' fees and costs arising out of, related to, or incurred in this civil action, except as provided in Paragraphs 6 and 7 below.

5.     <u>Cure Period</u>.  Except as otherwise provided herein, in the event any party violates the Judgment, the non-breaching party shall give written notice to the breaching party, which shall contain a reasonably specific description of the relevant circumstances constituting the alleged violation. The breaching party shall have thirty (30) calendar days to cure the violation, and also within that thirty (30) day period, the breaching party shall provide the non-breaching party with written evidence to support the breaching party's contention that the violation has been cured. If the violation is not cured within the thirty (30) day cure period, the non-breaching party may enforce the Judgment without further notice to the

breaching party.  Each party shall be allowed thirty (30) day cure periods under this Paragraph 5 for its first and second alleged violations of the Judgment.  If either party violates the Judgment more than two separate times, there will be no cure periods for any subsequent violations (after the second violation) by either party, and the non-breaching party may enforce the Judgment without any further notice of any kind to the breaching party.  Good faith consideration shall be given to extending such cure period, upon written notice by the breaching party, giving due regard to the circumstances of the violation, the good faith of the breaching party, and the factors involved in completing the cure.

6.    Violation of Judgment – Contempt of Court.  In the event that any part of this Judgment is violated by any Party, or by any of their present or former officers, directors, agents, servants, employees, members, or representatives, or by any person in active concert and participation with any Party that receives notice of this Judgment, the non breaching Party may file and serve a motion for contempt seeking damages, attorneys' fees and/or other appropriate relief.

7.    Violation of Judgment -- Prevailing Party Fees and Costs.  So long as the cure period provided for in Paragraph 5 is exercised or the cure period is no longer applicable, in an action or proceeding based upon an allegation that a Party has violated this Judgment, the prevailing Party shall be entitled to recover all of its reasonable attorneys' fees, expert witness fees, and other costs incurred in connection with the action or proceeding, not to exceed $750,000.  This paragraph shall not be construed to limit any Party's rights, remedies or procedural options.

8.    No Admission or Determination of Liability.  By stipulating to this Judgment, Defendants do not admit liability or wrongdoing for any of Summit's claims.  Defendants expressly deny all of Summit's claims and do not waive any of their defenses alleged in the Civil Action or otherwise available under law, including fair use and First Amendment.  This Judgment  shall not be considered an admission or determination of liability or wrongdoing by any party.

9.   <u>Binding Effect</u>.  The Judgment shall be binding upon and inure to the benefit of the Parties and all (as the case may be) successors, assigns, parent entities, subsidiaries, officers, directors, members, agents, and affiliates, and other persons who are in active concert or participation with anyone described herein, who receive actual notice of this Judgment by personal service or otherwise.

10.   <u>Continuing Jurisdiction</u>.  This Court shall retain jurisdiction to enforce this Judgment and the Agreement.

11.   <u>No Territorial Limit</u>.  This Judgment shall be enforceable inside and/or outside of the United States of America, though none of the parties waive any jurisdictional or proper forum defenses.

12.   <u>Bond</u>.  The bond posted for the Preliminary Injunction by Summit is hereby discharged.

13.   <u>Final Judgment</u>.  This Judgment shall be a final disposition of all claims alleged by Summit in this Civil Action, and this Judgment is not appealable.

IT IS SO ORDERED:

Dated:   03/11/11

HON. PHILLIP S. GUTIERREZ
UNITED STATES DISTRICT COURT

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

1   **AGREED TO AND ACCEPTED:**

2   SUMMIT ENTERTAINMENT, LLC

3

4   By _____          Date: _March 10, 2011_____

5       David C. Friedman

6       Executive Vice President and General Counsel

7   BECKETT MEDIA, LLC

8

9   By _____          Date: _3/10/11_____

10      Brian D. Gulledge

        President

11

12

13  UBIQUITY DISTRIBUTORS, INC.

14

15  By _____          Date: _____

16      Joseph Massey

        President

17

18  CURTIS CIRCULATION COMPANY, LLC

19

20  By _____          Date: _____

21      Dennis Porti

22      President

23  ***Approved as to Form***:

24  MANATT, PHELPS & PHILLIPS, LLP

25

26  By _____          Date: _March 10, 2011_____

27      Jill M. Pietrini

        *Attorneys for Plaintiff*

28      Summit Entertainment, LLC

**AGREED TO AND ACCEPTED:**

SUMMIT ENTERTAINMENT, LLC

By _____   Date: _____

    David C. Friedman
    Executive Vice President and General Counsel

BECKETT MEDIA, LLC

By _____   Date: _____

    Brian D. Gulledge
    President

UBIQUITY DISTRIBUTORS, INC.

By _____   Date: _____

    Joseph Massey
    President

CURTIS CIRCULATION COMPANY, LLC

By _____   Date: _____

    Dennis Porti
    President

*Approved as to Form:*

MANATT, PHELPS & PHILLIPS, LLP

By _____   Date: _____

    Jill M. Pietrini
    *Attorneys for Plaintiff*
    Summit Entertainment, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

**AGREED TO AND ACCEPTED:**

SUMMIT ENTERTAINMENT, LLC

By _____        Date: _March 10, 2011_

    David C. Friedman
    Executive Vice President and General Counsel

BECKETT MEDIA, LLC

By _____        Date: _3/10/11_

    Brian D. Gulledge
    President


UBIQUITY DISTRIBUTORS, INC.

By _____        Date: _____

    Joseph Massey
    President


CURTIS CIRCULATION COMPANY, LLC

By _____        Date: _3/11/11_

    ~~Dennis Porti~~   Domenic A. Croxetti
    ~~President~~   Vice President, Financial Services

*Approved as to Form:*

MANATT, PHELPS & PHILLIPS, LLP

By _____        Date: _March 10, 2011_

    Jill M. Pietrini
    *Attorneys for Plaintiff*
    Summit Entertainment, LLC

1

2  LEOPOLD, PETRICH & SMITH

3  By _____          Date: 10 ~~March~~ 2011

4  Joel M. Smith
   *Attorneys for Defendants*

5  Beckett Media, LLC and Ubiquity Distributors, Inc.

6

7  DECHERT, LLP

8

   By _____          Date: _____

9  Chris Scott Graham
   *Attorneys for Defendant*

10 Curtis Circulation Company, LLC

11

12

13

14  300218696.3

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEOPOLD, PETRICH & SMITH

By _____     Date: 10 March 2011

Joel M. Smith
*Attorneys for Defendants*
Beckett Media, LLC and Ubiquity Distributors, Inc.

DECHERT, LLP

By _____     Date: 10 March 2011

Chris Scott Graham
*Attorneys for Defendant*
Curtis Circulation Company, LLC

300218696.3

MANATT, PHELPS &
PHILLIPS, LLP

10